UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARK WHITE,<br><br>                              Plaintiff,<br><br>      v.<br><br>AG SUPPLY COMPANY OF<br>WENATCHEE,<br><br>                              Defendant. | NO:  2:15-CV-0089-TOR<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

BEFORE THE COURT is Defendant's Motion and Memorandum for Summary Judgment (ECF No. 10). This matter was submitted for consideration without oral argument. The Court—having reviewed the briefing, the record, and files therein—is fully informed.

## BACKGROUND

Plaintiff Mark White commenced this action on April 2, 2015. ECF No. 1. In his Complaint, White alleges that his employer, Defendant Ag Supply Company of Wenatchee ("Ag Supply"), interfered with, restrained, or denied White his rights

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

1    under the Family Medical Leave Act ("FMLA") when Ag Supply refused to

2    modify White's work schedule so that he could care for his mother. *Id.*

3         In the instant motion, Ag Supply moves for summary judgment on White's

4    sole FMLA claim, asserting that White was not entitled to FMLA leave and failed

5    to provide adequate notice of his desire to take leave. ECF No. 10.

6                                    **FACTS**

7         Ag Supply employed White in its East Wenatchee, Washington, Ace

8    Hardware store from May 28, 2002, to August 11, 2014. ECF No. 11 ¶ 1; *see* ECF

9    No. 18 (undisputed). As a sales supervisor, White was primarily responsible for

10   assisting customers and supervising employees. ECF No. 11 ¶ 3; *see* ECF No. 18

11   (undisputed).

12        Ag Supply had a policy governing FMLA leave. ECF No. 11 ¶¶ 4-5; *see*

13   ECF No. 15-1 at 5-6 (Guidelines Excerpt). Employees, such as White, had access

14   to this policy; indeed, White signed a form in March 2014 acknowledging that he

15   read the company's personnel guidelines, which included its FMLA policy. ECF

16   No. 15-1 at 2 (Acknowledgement Form). Pursuant to the guidelines and in

17   accordance with FMLA regulations, Ag Supply required employees to provide the

18   company with advance leave notice—at least 30 days—if the leave reason is

19   foreseeable. ECF No. 15-1 at 6. If advance notice was not provided, Ag Supply

20   retained the right to deny the request until at least 30 calendar days after the date of

notice. *Id.* If 30 calendar days was not practicable, the employee was required to give notice "as soon as practicable, usually within one or two business days of when the need for leave becomes known to you." *Id.*

During the relevant time period, the East Wenatchee store was open to the public from 7:00 a.m. to 8:00 p.m., Monday through Saturday, and from 8:00 a.m. to 5:00 p.m. on Sunday. ECF No. 11 ¶ 7; *see* ECF No. 18 (undisputed). Sales supervisors generally worked one of three shifts: the morning shift (6 a.m. to 3:30 p.m.), the afternoon shift (9:00 a.m. to 5:30 p.m.), or the evening shift (12:00 p.m. to 8:30 p.m.). ECF No. 11 ¶ 8; *see* ECF No. 18 (undisputed).

White had worked all three shifts at various times during his employment. ECF No. 11 ¶ 9; *see* ECF No. 18 (undisputed). In mid-July 2014, the time period relevant to White's Complaint, White's work schedule included some evening shifts. ECF No. 11 ¶ 12; *see* ECF No. 18 (undisputed).

White's work shifts became an issue in the summer of 2014. Since at least 2011, White's mother, Lucille White, suffered from dementia. *See* ECF Nos. 18 ¶ 22; 20 ¶ 10. Some months before July 2014, White, who lived with his mother, had noticed her condition was deteriorating and employed a caretaker to provide part-time care. ECF No. 12-2 at 5, 7 (White Deposition). On Wednesday, July 23, 2014, Pamela Coffell, an investigator and social worker for the Department of Social and Health Services, assessed Ms. White and advised White that she required 24-hour

care and that White needed a more consistent work schedule to develop a plan of care. ECF No. 18 ¶ 6.

That same day, White spoke to his immediate supervisor, Daniel Paskins, and briefly informed him of White's concerns regarding the care for his mother. ECF No. 18 ¶ 7. The next day, on Thursday, July 24, 2014, White again spoke with Paskins, this time expressly telling Paskins that he would be unable to work closing shifts and needed a consistent work schedule in order to help care for his mother. ECF Nos. 11 ¶ 14; 18 ¶ 9.

On Monday, July 28, 2014, White gave Paskins a letter, signed by Ms. Coffell, which requested White "receive a consistent work schedule to allow for his mother's plan of care," with ideal hours between 8:00 a.m. and 5:00 p.m., Monday through Friday. ECF Nos. 11 ¶ 24; 18 ¶ 12; *see* ECF No. 15-1 at 25 (Coffell Letter). Although Paskins tells a different version of the conversation that followed, White asserts that Paskins informed him that he could only take leave in blocks of time, such as days or weeks. ECF No. 18 ¶ 13. Understanding that his schedule would not be immediately fixed, White submitted his 2-week letter of resignation later that day.[1] ECF Nos. 11 ¶ 29; 18 ¶ 20; 15-1, Ex. J.

---

[1] White's last day of employment was August 11, 2014. ECF No. 11 ¶ 31; *see* ECF No. 18 (undisputed).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

On August 4, 2014, Dr. Havlicek, Ms. White's "main" provider, ECF No. 12-2 at 6 (White Deposition), examined Ms. White. ECF No. 20-1 at 2-3. Before this time, Dr. Havlicek had not seen Ms. White for three years. *See* ECF No. 20-1 at 2 (Dr. Havlicek Progress Notes). Dr. Havlicek found that Ms. White has "severe dementia" and opined that she required 24-hour supervision and that it would be unsafe for her to be alone for long periods of time. ECF No. 18 ¶ 21; *see* ECF No. 20-1 at 2-3. Later that month, Ms. White was admitted to Cashmere Convalescent Center and has remained under the care of Dr. Timiras of Confluence Health. ECF No. 12-1 at 22-27 (Medical Records).

## DISCUSSION

### A. Legal Standard

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will

be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that the trier-of-fact could find in favor of the non-moving party. *Id.* "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and alterations omitted). Moreover, "[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007), and only evidence which would be admissible at trial may be considered, *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). *See also Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) ("[I]n ruling on a motion for summary judgment, the evidence of the

1  nonmovant is to be believed, and all justifiable inferences are to be drawn in his

2  favor." (internal quotation marks and brackets omitted)).

3    **B. Family Medical Leave Act**

4    "The FMLA provides job security to employees who must be absent from

5  work because of their own illnesses, to care for [] family members who are ill, or

6  to care for new babies." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1119

7  (9th Cir. 2001) (citing 29 U.S.C. § 2612). The Act represents Congress' attempt to

8  strike a balance between "the needs of both employees and their employers," *id.*,

9  entitling "employees to take reasonable leave for medical reasons . . . in a manner

10  that accommodates the legitimate interests of employers," 29 U.S.C. § 2601(b)(2),

11  (3). "To that end, '[t]he FMLA creates two interrelated, substantive employee

12  rights: first, the employee has a right to use a certain amount of leave for protected

13  reasons, and second, the employee has a right to return to his or her job or an

14  equivalent job after using protected leave.'" *Sanders v. City of Newport*, 657 F.3d

15  772, 777 (9th Cir. 2011) (quoting *Bachelder*, 259 F.3d at 1122).

16    At issue here is an employee's right to use leave to which he is entitled.

17  Under 29 U.S.C. § 2615(a)(1), known as the "interference or "entitlement" claim,

18  it is "unlawful for any employer to interfere with, restrain, or deny the exercise of

19  or the attempt to exercise" the substantive rights guaranteed by the FMLA.

20  *Sanders*, 657 F.3d at 777-78. To make out a prima facie case of FMLA

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

interference, an employee must establish that "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Id.* at 778.

For purposes of the instant motion, Ag Supply does not dispute that White was eligible for FMLA's protections, Ag Supply was covered by the FMLA, and Ag Supply denied White's request for an immediate modified work schedule. Rather, Ag Supply focuses on the third and fourth elements of White's prima facie case, asserting that White was not entitled to FMLA leave at the time of his request and that he failed to provide adequate notice of his intent to take leave. This Court will address each argument in turn.

1. <u>Entitlement to Leave</u>

The FMLA entitles an employee to take leave in order to care for a parent with a serious health condition, as defined under the Act and its implementing regulations. 29 U.S.C. § 2612(a)(1)(C); 29 C.F.R. § 825.201(a). The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves . . . (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). "[C]ontinuing treatment," when the employee or

1  family member suffers from a period of incapacity which is permanent or long-

2  term, is defined as "the continuing supervision of . . . a health care provider." 29

3  C.F.R. § 825.115(d).  In turn, the FMLA defines "health care provider" as "(A) a

4  doctor of medicine or osteopathy who is authorized to practice medicine or surgery

5  (as appropriate) by the State in which the doctor practices; or (B) any other person

6  determined by the Secretary to be capable of providing health care services." 29

7  U.S.C. § 2611(6); see 29 C.F.R. § 825.125(b) (enumerating included health care

8  providers).

9        While Ag Supply acknowledges that Ms. White suffered from dementia

10  during the relevant time period, it asserts that the undisputed facts show Ms. White

11  was not under the supervision of a health care provider when White requested that

12  his schedule be immediately modified. ECF Nos. 10 at 2-5; 21 at 2-6. In response,

13  White contends that his mother saw Dr. Havlicek, a qualified health care provider,

14  about one week after White put in his leave request and was admitted for inpatient

15  care within a month. ECF No. 17 at 6-10. However, White appears to concede that

16  Ms. White was not under continual supervision of a health care provider in late

17  July 2014.[2] *See id.* at 7 ("[Ag Supply's] hair-splitting argument is that Ms. White

18

19  _____

    [2] White contends that he requested copies of his mother's medical records for the

20  years 2010 to 2012 from Confluence Health but has not yet received any records.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

was not suffering from a permanent or long term condition because she had not

been continually supervised by a health care provider.").

This Court finds the undisputed evidence shows Ms. White was not under

the "continuing supervision of . . . a health care provider," and thus White was not

entitled to take immediate leave when he so requested in late July 2014. At the

time White requested leave, Ms. White suffered from dementia, but it is undisputed

that she was not under the continuing supervision of a qualified health care

provider. While Ms. Coffell, a social worker, assessed Ms. White in late July 2014,

she is not a health care provider as defined under the FMLA. ECF No. 18 ¶ 6; *see*

29 C.F.R. § 825.125(b) (defining "health care provider" to include "*clinical* social

workers"). Dr. Havlicek, Ms. White's "main" health care provider, did not treat or

supervise Ms. White during the period between April 2011 and August 4, 2014,

ECF No. 18 ¶¶ 21, 22; *see* ECF No. 20-1 at 2 (Dr. Havlicek's Progress Notes), and

---

ECF Nos. 18 ¶ 29; 20 ¶ 10. White has not asked this Court for a continuance of this

summary judgment hearing, and it appears White has had adequate time to secure

any relevant records; White commenced this action in April 2015, almost one year

ago. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

1    White has presented no other medical records to demonstrate that any other health

2    care provider saw her for her dementia at any time during this period.[3]

3          The fact that Ms. White received care and treatment starting in August 2014,

4    subsequent to White's leave request and resignation, is insufficient under a plain

5    reading of the Act and its implementing regulations. *See* 29 U.S.C. § 2612(a)(1)(C)

6    (entitling an employee to leave to care for a parent "if such . . . parent *has* a serious

7    health condition" (emphasis added); 29 C.F.R. § 825.115(d) ("The employee or

8    family member must *be under* the continuing supervision of, but need not be

9    *receiving* active treatment by, a health care provider." (emphasis added)). White's

10   citation to case law holding that a family member does not need to be *diagnosed*

11   with a serious health condition before the leave request is inapplicable: the issue is

12   not whether Ms. White was diagnosed with dementia or otherwise incapacitated

13   but whether she was under continual supervision for this disorder.

14         It is not the role of this Court to expand the scope of FMLA coverage.

15   Based on the undisputed facts, Ms. White was not under the continual supervision

16   of a health care provider at the time White requested leave on her behalf;

17

18

19   [3] Ms. White visited a dermatologist in the summer of 2013, but this visit was

20   unrelated to her dementia. ECF No. 18 ¶ 23.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

accordingly, White was not entitled to FMLA leave when he so requested and his

prima facie case fails on this basis.

2.  <u>Notice of Intent to Take Leave</u>

Alternatively, even assuming that Ms. White's subsequent medical care is

sufficient to satisfy the continual supervision standard under the FMLA

regulations, White's claim also fails because he failed to provide Ag Supply

adequate notice of his intent to take leave.

Generally, an employee is required to give his employer advance notice

before requesting leave. 29 C.F.R. §§ 825.302(a), 825.303(c). If the need for leave

is foreseeable, "[a]n employee must provide the employer at least 30 days advance

notice before FMLA leave is to begin." *Id.* § 825.302(a); *see Bachelder*, 259 F.3d

at 1130. If 30 days advance notice is not practicable, notice must be given as soon

as both possible and practical. *See* 29 C.F.R. § 825.302(a), (b). Conversely,

"[w]hen the approximate timing of the need for leave is *not foreseeable*, an

employee must provide notice to the employer as soon as practicable under the

facts and circumstances of the particular case." *Id.* § 825.303(a) (emphasis added);

*Bachelder*, 259 F.3d at 1130.

To constitute adequate notice, "[t]he employee need not expressly assert

rights under the FMLA or even mention the FMLA, but may only state that leave

is needed for a qualifying reason." 29 C.F.R. § 825.302(c). Instead, "[e]mployees

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

1  need only notify their employers that they will be absent under circumstances

2  which indicate that the FMLA might apply . . . ." *Bachelder*, 259 F.3d at 1130; *see*

3  *Price v. City of Fort Wayne*, 117 F.3d 1022, 1026 (7th Cir. 1997) ("The FMLA

4  does not require that an employee give notice of a desire to invoke the FMLA.

5  Rather, it requires that the employee give notice of *need* for FMLA leave.").

6       Failure to give adequate notice may result in a delay in coverage. "When the

7  need for FMLA leave is foreseeable at least 30 days in advance and an employee

8  fails to give timely advance notice with no reasonable excuse, the employer may

9  delay FMLA coverage until 30 days after the date the employee provides notice."

10 29 C.F.R. § 825.304(b). "When the need for FMLA leave is foreseeable fewer than

11 30 days in advance and an employee fails to give notice as soon as practicable

12 under the particular facts and circumstances, the extent to which an employer may

13 delay FMLA coverage for leave depends on the facts of the particular case." *Id.* §

14 825.304(c). "When the need for FMLA leave is unforeseeable and an employee

15 fails to give notice . . . , the extent to which an employer may delay FMLA

16 coverage for leave depends on the facts of the particular case. *Id.* § 825.304(d). "In

17 all cases . . . it must be clear that the employee had actual notice of the FMLA

18 notice requirements." *Id.* § 825.304(a).

19       Ag Supply contends that White failed to provide advance notice of his desire

20 to take leave. ECF No. 10 at 5. At most, White provided 5 days' notice of his

demand for an immediate fixed schedule and with no justification for the lack of greater notice. ECF No. 21 at 6. In response, White contends he provided adequate notice: he contends that he was unaware his mother needed 24-hour care until July 23, 2014, and he informed Ag Supply that same day. ECF No. 17 at 10-11.

As an initial matter, the parties do not genuinely dispute that White had actual notice of the FMLA notice requirements. While White contends he chose not to read Ag Supply's FMLA leave policy, he signed the acknowledgement form affirming that he "read the Ag Supply . . . Personnel Guidelines," which included the company's FMLA leave policy and notice requirements. *See* ECF No. 15-1 at 2 (Acknowledgement Form).

 It is also undisputed that White first requested leave, at the earliest, on July 23, 2014, when he spoke to his supervisor about his mother's condition and her need for greater care. ECF No. 18 ¶ 19. Five calendar days later, when Paskins did not immediately approve White's schedule request, White resigned. *Id.* Thus, White gave Ag Supply, at most, five days' advance notice of his desire to take FMLA leave.

The issue then, is whether White's reason for requesting leave was foreseeable. Construing the facts in the light most favorable to White, this Court finds a reasonable jury could reach but one conclusion: White's reason for leave was foreseeable. White contends his mother's dementia existed since at least 2011.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

ECF No. 18 ¶ 22. And about eight months prior to July 23, 2014, when he first put Ag Supply on notice of his leave request, White hired a part-time caretaker for his mother. *See* ECF No. 12-2 at 5 (White Deposition). Although Ms. Coffell first told White that his mother needed 24-hour supervision on July 23, 2014, ECF No. 18 ¶ 6, White admitted that he began noticing changes in his mother's condition months prior to this date, ECF No. 12-2 at 7 (White Deposition). After all, White lived with his mother and personally witnessed the changes. *Id.*

Because White's reason for leave was foreseeable, he was obligated to provide Ag Supply 30 days advance notice of his intent to take leave. Instead, White provided Ag Supply, at most, five calendar days advance notice. Ag Supply was thus permitted under the regulations to delay White's leave request until 30 days after White first provided notice, which was several weeks after White's resignation went into effect. Accordingly, White's claim fails for lack of adequate notice as well.[4]

---

[4] It is worth noting that Ag Supply, pursuant to its written FMLA policy available to employees, had the right to require that the leave-requesting employee provide medical certification in support of a leave request. *See* ECF No. 15-1 at 6. Under the regulations, "the employer should request that an employee furnish certification at the time the employee gives notice of the need for leave or within five business

1    That White was put in an untenable position is understandable, but the

2    FMLA does not provide a remedy for all leave requests, only those strictly within

3    its coverage.

4    **ACCORDINGLY, IT IS ORDERED:**

5    Defendant's Motion for Summary Judgment (ECF No. 10) is **GRANTED**.

6    The District Court Executive is directed to enter this Order, provide copies

7    to counsel, enter **JUDGMENT** for Defendant, and close the file.

8    **DATED** February 23, 2016.

9



10                                            THOMAS O. RICE
                                    Chief United States District Judge
11

12

13

14

15

16

_____

17   days thereafter . . . ." 29 C.F.R. § 825.305. Under the timeline presented here, five

18   business days had not passed before White turned in his letter of resignation.

19   White would not have had the required documentation until August 4, 2014, but by

20   then he had already resigned.


ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16